UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TAMARA B., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. 3:18-cv-05219-JCC-TLF <br><br> REPORT AND RECOMMENDATION <br><br> Noted for April 26, 2019 |

Tamara B. has brought this matter for judicial review of the Commissioner's denial of her applications for disability insurance and supplemental security income (SSI) benefits. This matter has been referred to the undersigned magistrate judge. *Mathews, Sec'y of H.E.W. v. Weber*, 423 U.S. 261 (1976); 28 U.S.C. § 636(b)(1)(B); Local Rule MJR 4(a)(4). For the reasons below, the undersigned recommends that the Court reverse and remand the Commissioner's decision to deny benefits.

PROCEDURAL BACKGROUND

Plaintiff filed applications for disability insurance and supplemental security income benefits in November 2013, alleging that her disability onset date was September 26, 2013. Administrative Record (AR) 19. 53-54. The disability insurance application was denied after initial and reconsideration administrative review; plaintiff appealed and the administrative law

REPORT AND RECOMMENDATION – 1

judge (ALJ) conducted two hearings. *Id.* Plaintiff appeared and testified. *Id.* The second hearing was held to obtain medical expert testimony, including testimony by Jeff Hanson, M.D., that plaintiff's condition was equal in severity to a listing-level impairment. AR 19, 98.

The ALJ applied the five-step analysis required under 20 C.F.R. § 416.920(a)(4). In the written decision, the ALJ rejected Dr. Hanson's testimony and determined plaintiff's impairment does not equal the severity of a listed impairment and she has the residual functional capacity to perform light work. AR 22, 25, 30. The ALJ determined that Plaintiff is not disabled. AR 20. Plaintiff appealed to this Court, asking for reversal and remand for an award of benefits. Dkt. 10.

## ISSUE FOR REVEW

1. Whether the Court should reverse and remand when the ALJ rejected the opinion of Dr. Hanson, a medical expert who testified as a neutral expert called by the ALJ?

## STANDARD OF REVIEW

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error; or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence means "'more than a mere scintilla,'" though "'less than a preponderance'" of the evidence; and it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* __ U.S. __ , No. 17-1184, Slip Op. at 3 (April 1, 2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

If more than one rational interpretation can be drawn from the evidence, then the Court must uphold the ALJ's interpretation. *Orn v. Astrue,* 495 F.3d 625, 630 (9th Cir. 2007). That is, "[w]here there is conflicting evidence sufficient to support either outcome," the Court "must

affirm the decision actually made." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)). The Court, however, may not affirm by locating a quantum of supporting evidence and ignoring the non-supporting evidence. *Orn*, 495 F.3d at 630.

The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court is required to weigh both the evidence that supports, and evidence that does not support, the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* at 1010. Only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.*

## DISCUSSION

A.  <u>The ALJ's Evaluation of Medical Opinion Evidence</u>

Dr. Hanson did not examine the plaintiff; he testified, based on his review of the record, that plaintiff has fibromyalgia. AR 97. He concluded that plaintiff's condition is medically equal to those listed in 14.00, immune disorders, including listing 14.09, inflammatory arthritis. AR 97-98. *See* 20 CFR Part 404, Subpart P, Appendix 1.

He further opined that plaintiff is markedly limited, based on "the various descriptions of pain and presentation in the ER, the rheumatology clinic, the family practice clinic, and everywhere else that she is limited by that," and based on evidence of degenerative disc disease in the lumbar and cervical spine. AR 98. Dr. Hanson further cited diabetes, depression, anxiety, and social phobia as factors contributing to plaintiff's disability. AR 99.

In general, an ALJ gives more weight to a treating or examining physician's opinion than to the opinions of those who do not treat or examine the claimant. *See Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017). An ALJ "may reject the opinion of a non-examining physician by

REPORT AND RECOMMENDATION – 3

reference to specific evidence in the medical record." *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998). An opinion that is more consistent with the record as a whole is generally more persuasive. *See* 20 C.F.R. § 416.927(c)(4).

Here, the ALJ gave three reasons for rejecting Dr. Hanson's testimony: (1) the record does not contain specific evidence about fibromyalgia; (2) Dr. Hanson's assessment was based mostly on plaintiff's subjective reporting; and (3) plaintiff worked more than 60 hours per week in a medium level job ending several months before the alleged onset date.[1] AR 30. The ALJ found that the plaintiff's symptoms did not meet the listing for fibromyalgia at step three of the five-step analysis. AR 23. The ALJ found at step four that the plaintiff had a residual functional capacity (RFC) to do light work, except that she had certain limitations—for example, she could "sit or stand for up to an hour at a time, but then would require the ability to change from sitting to standing while remaining on task." AR 25. In addition, the ALJ determined that the plaintiff "can perform simple routine tasks and can work in a routine and predictable setting". *Id.*

The Court should reverse and remand, because the ALJ's reasons for rejecting the testimony of Dr. Hanson are not supported by substantial evidence. The rejection of this evidence undermines the ALJ's findings at steps three, four and five of the five-step process for evaluating whether the plaintiff is disabled. Therefore, a reversal and remand for additional proceedings is necessary.

1. Lack of Specific Evidence of Fibromyalgia

The ALJ found there was a lack of significant evidence about fibromyalgia, except for historical reference, in the medical record. AR 30. But the Ninth Circuit has held that an ALJ

---

[1] The ALJ provided a fourth reason: that Dr. Hanson did not cite to any specific exhibits to support his finding that other forms of inflammatory arthritis had been ruled out. AR 30. However, the Commissioner did not brief this reason, Dkt. 16, p. 3 n.3, so it will not be addressed.

REPORT AND RECOMMENDATION – 4

1  must construe medical evidence "in light of fibromyalgia's unique symptoms and diagnostic

2  methods"; failure to do so is error. *Revels v. Berryhill*, 874 F.3d 648, 662 (9th Cir. 2017).

3      "Fibromyalgia is a 'rheumatic disease that causes inflammation of the fibrous connective

4  tissue components of muscles, tendons, ligaments, and other tissue.'" *Revels*, 874 F.3d at 656

5  (quoting *Benecke v. Barnhart*, 379 F.3d 587, 589 (2004)). Its symptoms include "'chronic pain

6  throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance

7  that can exacerbate the cycle of pain and fatigue.'" *Id.* (quoting *Benecke*, 379 F.3d at 590).

8  "[T]hose suffering from it have 'muscle strength, sensory functions, and reflexes [that] are

9  normal,'" and they show "'an absence of symptoms that a lay person may ordinarily associate

10 with joint and muscle pain.'" *Id.* (quoting *Rollins v. Massanari*, 261 F.3d 853, 863 (9th Cir.

11 2001) (Ferguson, J., dissenting)). For this reason, fibromyalgia "is diagnosed 'entirely on the

12 basis of the patients' reports of pain and other symptoms,'" with "'no laboratory tests to confirm

13 the diagnosis.'" *Id.* (quoting *Benecke*, 379 F.3d at 590).

14     "[D]iagnosis of fibromyalgia does not rely on X-rays or MRIs." *Revels*, 874 F.3d. at 657.

15 Instead, a fibromyalgia diagnosis depends on satisfying one of two sets of criteria. *Id.* at 656.

16 Under one set of criteria,

17     a person suffers from fibromyalgia if: (1) she has widespread pain that has lasted
       at least three months (although the pain may "fluctuate in intensity and may not
18     always be present"); (2) she has tenderness in at least eleven of eighteen specified
       points on her body; and (3) there is evidence that other disorders are not
19     accounting for the pain.

20 *Id.* at 657 (quoting Social Security Ruling (SSR) 12-2p at *2–3). Under the second set of criteria,

21     a person suffers from fibromyalgia if: (1) she has widespread pain that has lasted
       at least three months (although the pain may "fluctuate in intensity and may not
22     always be present"); (2) she has experienced repeated manifestations of six or
       more fibromyalgia symptoms, signs, or co-occurring conditions, "especially
23     manifestations of fatigue, cognitive or memory problems ('fibro fog'), waking

24

25

unrefreshed, depression, anxiety disorder, or irritable bowel syndrome"; and (3) there is evidence that other disorders are not accounting for the pain.

*Id.* (quoting SSR 12-2p at *3).

Such "symptoms, signs, and co-occurring conditions" are themselves evidence of fibromyalgia, even when the record does not expressly attribute the symptoms to the disease. *See* SSR 12-2p at *3.

The ALJ recognized that plaintiff has been diagnosed with fibromyalgia, and the ALJ found that fibromyalgia was a severe impairment. AR 22. Signs and symptoms of fibromyalgia include muscle pain, pain in the abdomen, chest pain, headache, numbness or tingling, insomnia, depression, and nervousness. SSR 12-2p n.9. Co-occurring conditions include depression and anxiety. SSR 12-2p n.10.

The record contains abundant evidence of these types of symptoms, signs, and co-occurring conditions. Plaintiff's providers consistently noted pain and tenderness in her back, and neck, for which she sought treatment. AR 370, 380, 388, 392, 394, 396-97, 399, 401, 404, 406, 408, 411, 429, 431, 433, 434-35, 439, 440, 523, 568, 659, 898. Plaintiff frequently presented with hip pain and tenderness on both sides. AR 443, 445, 456, 461, 584, 593, 822, 1001, 1017, 1022, 1029, 1032. Plaintiff had pain in her abdomen, AR 1070, chest, AR 605, 636, 1001, 1019, and shoulder, AR 565. Plaintiff had a history of headaches and migraines. AR 427, 438, 439, 504, 568, 1033. Plaintiff experienced numbness and tingling in her fingers and feet. AR 1042. Plaintiff experienced insomnia. AR 425, 430. Plaintiff also suffered from depression and anxiety. AR 426, 461, 710, 909, 1038. These symptoms appear throughout the medical record.

Along with significant evidence of fibromyalgia symptoms, plaintiff's medical providers referred to fibromyalgia. Because medical evidence must be construed in light of fibromyalgia's

unique characteristics, *Revels*, 874 F.3d at 662, constant descriptions of fibromyalgia in plaintiff's medical history is relevant. Further, the record contains non-historic references to fibromyalgia. One doctor specifically attributed plaintiff's existing hip pain to fibromyalgia. AR 456. Another provider noted that plaintiff was using prescribed "fibromyalgia medication." AR 682. The record thus does not support the ALJ's finding that it lacks significant evidence of fibromyalgia other than by history.

    2.    <u>Assessment Based on Subjective Reporting.</u>

The ALJ also discounted Dr. Hanson's opinion in part because "[m]ost of his assessment seems to be based on the claimant's subjective reporting about chronic pain. The remainder contains limited objective findings." AR 30. In fibromyalgia cases, an ALJ may not discount a medical opinion solely because it relied on a claimant's subjective reports. *Revels*, 874 F.3d at 656. "Fibromyalgia is diagnosed 'entirely on the basis of patients' reports of pain and other symptoms.'" *Id.* at 663 (quoting *Benecke*, 379 F.3d at 590).

An ALJ may reject a medical opinion if it is based "to a large extent" on a claimant's self-reports – if those reports have been properly discounted. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). The ALJ found plaintiff's "statements concerning the intensity, persistence and limiting effects of [the] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." AR 26. Therefore, whether the ALJ properly discounted Dr. Hanson's opinion for relying on plaintiff's self-reports depends, first, on whether the ALJ properly discounted plaintiff's self-reports, and, second, on whether Dr. Hanson's opinion was largely based on those self-reports. The record does not contain substantial evidence to support either finding.

i.   *Substantial evidence does not support the ALJ's finding that the medical evidence contradicts plaintiff's subjective complaints of the severity of her symptoms.*

The ALJ found the medical evidence contradicted plaintiff's subjective complaints for the following reasons: The claimant's statements about the history of her back pain, the results of plaintiff's neurological examinations, recommendations of conservative treatment, and improvement in plaintiff's other conditions. AR 26-27. Yet "medical evidence must be construed in light of fibromyalgia's unique symptoms and diagnostic methods," *Revels*, 874 F.3d at 662, and the ALJ did not evaluate the medical evidence in light of plaintiff's fibromyalgia diagnosis. Substantial evidence does not support his credibility determination.

The ALJ erred in evaluating plaintiff's statements regarding history of back pain because he did not analyze her reports of pain in light of her fibromyalgia diagnosis. The ALJ noted that in February 2013, seven months before the alleged onset date, plaintiff's back pain "only bothered her four days a week, despite alleging it had been going on 'for years.'" AR 26. However, these two statements are not inconsistent, especially in light of plaintiff's fibromyalgia diagnosis. "SSR 12-2p recognizes that the symptoms of fibromyalgia 'wax and wane,' and that a person may have 'bad days and good days.'" *Revels*, 874 F.3d at 657 (citing SSR 12-2p at *6). The plaintiff's statements about experiencing back pain four days a week over the course of years does not contradict her statements about experiencing severe pain.

The ALJ also noted that in early 2013, plaintiff stated that she functioned better with pain medication and that in February 2016 she expressed improvement with a home exercise program and physical therapy. AR 26, 27. But because fibromyalgia symptoms may wax and wane, this intermittent improvement does not support discrediting pain testimony. *See Revels*, 874 F.3d at 657.

REPORT AND RECOMMENDATION – 8

The ALJ also erred by relying on plaintiff's neurological, musculoskeletal, and other physical examinations; yet these examinations do not measure the severity of fibromyalgia. The ALJ emphasized the results of these examinations, citing more than ten in the credibility evaluation. *See* AR 26–27. But the examination results relied on by the ALJ do not necessarily reflect the severity of plaintiff's fibromyalgia symptoms:

> What is unusual about the disease is that those suffering from it have muscle strength, sensory functions, and reflexes that are normal. Their joints appear normal, and further musculoskeletal examination indicates no objective joint swelling. Indeed, there is an absence of symptoms that a lay person may ordinarily associate with joint and muscle pain. The condition is diagnosed entirely on the basis of the patients' reports of pain and other symptoms.

*Revels*, 874 F.3d at 656. Therefore, these examination results would not be relevant for purposes of discrediting plaintiff's pain symptoms.

The ALJ also erred in characterizing plaintiff's treatment as conservative. The ALJ noted that "no surgical intervention was advised" for plaintiff's neck and back symptoms, acupuncture was advised for fibromyalgia symptoms, and the majority of treatment recommendations focused on physical therapy and home exercise. AR 26-27.

In *Revels*, the court identified the prescription of pain medication and injection of pain relievers as signs of aggressive treatment for fibromyalgia. 874 F.3d at 667. While the ALJ here noted that plaintiff was denied opiates for her pain, AR 26, the medical record shows that plaintiff was prescribed Tizanidine, referred to as "fibromyalgia medication," and Cyclobenzaprine, and that she also received Toradol injections as late as 2016. AR 60, 680, 682. The plaintiff also testified that she was taking multiple prescription medications to treat migraine headaches. AR 59. The plaintiff's course of treatment does not contradict her reports of pain, and the evidence of "conservative" treatment is not substantial.

REPORT AND RECOMMENDATION – 9

Finally, the ALJ erred in discrediting plaintiff's self-reports based on improvement in plaintiff's other conditions because the ALJ evaluated these separately from plaintiff's fibromyalgia diagnosis. After discounting plaintiff's physical symptoms, the ALJ turned to plaintiff's mental health diagnoses. The ALJ determined that these alone were insufficient for a disability determination. AR 27. The ALJ acknowledged plaintiff's depression and noted that from 2012 to 2016, plaintiff's psychological examinations were within limits, in 2014 plaintiff's depression was considered under fair control and improved with medication, and in 2015 plaintiff's mood was found to have improved. *Id.* While this evidence might show that plaintiff's mental health – considered in isolation -- does not render her disabled, depression is a co-occurring condition with fibromyalgia. SSR 12-2p n.10. Improvement in plaintiff's mental health alone is not substantial evidence to discount plaintiff's statements of the severity of her fibromyalgia.

The ALJ also noted that plaintiff's diabetes came under control and plaintiff lost some weight. AR 27. However, these are separate conditions from fibromyalgia—not symptoms or co-occurring conditions that are associated with fibromyalgia. Therefore, this is not substantial evidence to discredit plaintiff's statements regarding the severity of her fibromyalgia symptoms.

As a result, the ALJ erred in his analysis of plaintiff's credibility in light of the medical evidence, and his determination is not supported by substantial evidence.

    ii.    *Substantial evidence does not support the ALJ's finding that the remainder of the evidence contains limited objective findings*.

Fibromyalgia is diagnosed "entirely on the basis of patients' reports of pain and other symptoms." *Revels*, 874 F.3d at 663 (citing *Benecke*, 379 F.3d at 590). This does not mean that objective evidence is irrelevant to show limitations due to fibromyalgia. Here, the record,

REPORT AND RECOMMENDATION – 10

1  including Dr. Hanson's testimony and plaintiff's treatment notes, contradicts the ALJ's finding

2  that Dr. Hanson's opinion was not supported by objective evidence.

3        In *Revels*, the court determined the ALJ erred when he rejected a medical opinion

4  "because it was supposedly not 'supported by objective medical evidence.'" 874 F.3d at 663. The

5  court observed that under SSR 12-2p, "tender-point examinations themselves constitute

6  'objective medical evidence' of fibromyalgia," even though they are based on self-reports. *Id.*

7  Tender point examinations are one of two methods for diagnosing fibromyalgia. The other

8  method looks for repeated manifestations of six or more fibromyalgia symptoms, signs, or co-

9  occurring conditions. Signs and symptoms include muscle pain, pain in the abdomen, chest pain,

10  headache, numbness or tingling, insomnia, and depression, SSR 12-2p n.9, and co-occurring

11  conditions include depression and anxiety, SSR 12-2p n.10. Therefore repeated manifestations of

12  these signs, symptoms, and co-occurring conditions can serve as objective evidence. Not only are

13  these conditions present, as mentioned above, but Dr. Hanson alluded to these symptoms and

14  how they interact with other conditions to reach a degree of severity equal to a listing. AR 94-99.

15        Further, because the symptoms of fibromyalgia wax and wane, "after a claimant has

16  established a diagnosis of fibromyalgia, an analysis of her RFC should consider 'a longitudinal

17  record whenever possible.'" *Revels*, 874 F.3d at 657. Thus, the longstanding presence of a

18  fibromyalgia diagnosis and symptoms may constitute objective evidence of fibromyalgia. Dr.

19  Hanson observed that plaintiff's diagnosis of fibromyalgia was persistent and dated back to

20  2011. AR 93.

21        Dr. Hanson's discussion of the medical evidence related to the test for fibromyalgia and

22  how the symptoms interact with other conditions to reach a particular level of severity constitutes

reliance on objective medical evidence. Therefore, the ALJ lacked substantial evidence for his finding that Dr. Hanson's opinion was not based on objective evidence. *See* AR 30.

   3. <u>Prior Work Activity</u>

  The ALJ discounted Dr. Hanson's opinion in part because there is evidence the claimant was working more than 60 hours per week in early 2013 at a medium level job. AR 30. This reason is not supported.

  The plaintiff's work history can serve as evidence regarding the severity of symptoms. However, this work stopped in early 2013, AR 30, and the alleged onset date was September 26, 2013, AR 56. The Commissioner argues that an impairment of longstanding duration that does not prevent a claimant from working, paired with evidence that the claimant's condition did not worsen, is evidence that the claimant could have continued working. Dkt. 16, p. 4.

  Regardless of whether this argument is accurate, the record shows that plaintiff's condition worsened between early 2013 and her alleged onset date. The plaintiff had been working as a certified nursing assistant, a job requiring her to lift over 100 pounds. She stopped doing that work because her doctor told her that she could not lift anything over 25 pounds. AR 56. The plaintiff's treating physician determined that her condition worsened to the point that she could no longer continue in her former job. Accordingly, plaintiff's ability to work in early 2013 does not support the ALJ's rejection of Dr. Hanson's opinion.

  B. <u>Harmless Error</u>

  An error is harmless in the social-security context only if it is not prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Commissioner, Social Security Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). Here, the ALJ's errors in rejecting Dr. Hanson's testimony arose from an apparent misunderstanding of fibromyalgia and affected the ALJ's assessment of whether plaintiff's fibromyalgia condition

met the criteria of the listing at step three, and also plaintiff's residual functional capacity for purposes of steps four and five. *See Revels*, 874 F.3d at 662. Accordingly, the ALJ's error was not harmless.

### REMAND FOR FURTHER PROCEEDINGS

Plaintiff seeks reversal and remand for calculation of benefits. The decision whether to remand for additional evidence or for an award of benefits "is within the discretion of the court." *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). If an ALJ commits an error, and there is uncertainty and ambiguity in the record, and further proceedings can remedy the error, the Court should remand for that purpose, rather than to award benefits. *Leon v. Berryhill,* 880 F.3d 1041, 1045 (9th Cir. 2017); *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017).

Here, plaintiff's case does not meet the three-part "credit as true" standard required for such relief. *See Leon*, 880 F.3d at 1047. Further proceedings can remedy the error. Accordingly, remand is warranted for further consideration of the issues identified above. In particular, the ALJ should reconsider both Dr. Hanson's testimony and plaintiff's testimony "in light of fibromyalgia's unique symptoms and diagnostic methods," and in light of the entire medical record. The ALJ should then reassess plaintiff's eligibility for a listing finding at step three and, if necessary, reassess her residual functional capacity.

### CONCLUSION

For the above reasons, the Court should find that the ALJ improperly determined plaintiff to be not disabled. The Commissioner's decision to deny benefits should therefore be REVERSED and REMANDED to the Commissioner for further administrative proceedings in accordance with the findings herein.

The parties have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); Federal Rule of Civil Procedure (FRCP) 72(b); *see also* FRCP 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the above time limit, the Clerk shall set this matter for consideration on **April 26, 2019**, as noted in the caption.

Dated this 8th day of April, 2019.

Theresa L. Fricke
United States Magistrate Judge

REPORT AND RECOMMENDATION – 14